**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETICS IN WASHINGTON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil Action No. 19-1344 (RBW) |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| Defendant. | ) ) | |
| REPORTERS COMMITTEE FOR FREEDOM OF THE PRESS, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | Civil Action No. 19-2125 (RBW) |
| U.S. DEPARTMENT OF STATE, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION

The plaintiffs in the above-captioned matters, Citizens for Responsibility and Ethics in

Washington ("CREW") and the Reporters Committee for Freedom of the Press (the "RCFP"),

bring these civil actions against the defendant, the United States Department of State (the

"Department"), pursuant to the Freedom of Information Act (the "FOIA"), 5 U.S.C. § 552.  See

generally Complaint for Injunctive and Declaratory Relief ("Compl. I"), Civ. Action No. 19-

1344,[1] ECF No. 1; Complaint for Declaratory and Injunctive Relief ("Compl. II"), Civ. Action

No. 19-2125, ECF No. 1.  Currently pending before the Court are (1) the Defendant's Motion for

---

[1] Unless indicated otherwise, the docket numbers to which the Court will be referring are derived from the docket for Civil Action No. 19-1344.

Summary Judgment (the "Department's motion" or "Def.'s Mot."), ECF No. 18, and (2) the

Plaintiffs' Cross-Motion for Partial Summary Judgment (the "plaintiffs' motion" or "Pls.' Mot"),

ECF No. 19.  Upon careful consideration of the parties' submissions,[2] the Court concludes for

the following reasons that it must grant in part and deny in part both the Department's motion for

summary judgment and the plaintiffs' cross-motion for partial summary judgment.

## I.      BACKGROUND

CREW represents that it is "a non-profit, non-partisan organization . . . committed to

protecting the rights of citizens to be informed about the activities of government officials and

agencies, and to ensuring the integrity of government officials and agencies."  Compl. I ¶ 4.  The

RCFP represents that it is "an unincorporated nonprofit association of reporters and editors

dedicated to preserving the First Amendment's guarantee of a free press and vindicating the

rights of the news media and the public to access government records."  Compl. II ¶ 3.

On March 19, 2019, both plaintiffs independently submitted FOIA requests to the

Department for records "relating to a telephone conference call on international religious

freedom on which [then-]Secretary of State [Michael] Pompeo had participated on March 18,

2019.  See Def.'s Facts ¶ 1; see Pls.' Facts I ¶ 1.  Specifically, the RCFP requested

---

[2] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Memorandum in Support of Motion for Summary Judgment ("Def.'s Mem"), ECF No. 18; (2) the Defendant's Statement of Material Facts Not in Genuine Dispute ("Def.'s Facts"), ECF No. 18-1; (3) the Declaration of Eric F. Stein ("Stein Decl."), ECF No. 18-2; (4) the plaintiffs' Memorandum in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment and in Opposition to Defendant's Motion for Summary Judgment ("Pls.' Mem."), ECF No. 19-1; (5) the Plaintiffs' Response to Defendant's Statement of Material Facts Not in Genuine Dispute and Statement of Undisputed Material Facts in Support of Cross-Motion for Partial Summary Judgment ("Pls.' Facts"), ECF No. 19-2; (6) the Declaration of Lin Weeks ("Weeks Decl."), ECF No. 19;  (7) the Defendant's Opposition to Plaintiffs' Cross-Motion for Summary Judgment, ECF No. 23; (8) the Defendant's Response to Plaintiffs' Statement of Undisputed Material Facts ("Def.'s Resp. to Pls.' Facts"), ECF No. 23-1; (9) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Motion for Summary Judgment and Defendant's Memorandum of Points and Authorities in Opposition to Plaintiff's Cross-Motion for Summary Judgment ("Def.'s Reply"), ECF No. 24; (10) the Second Declaration of Eric F. Stein ("2d Stein Decl."), ECF No. 24-1; and (11) the plaintiffs' Reply in Support of Plaintiffs' Cross-Motion for Partial Summary Judgment ("Pls.' Reply"), ECF No. 25.

> 1. Any transcripts, readouts, audio recordings, or other records that capture the substance of the March 18, 2019 call on "international religious freedom," in which Secretary Pompeo participated; 2. Any and all emails or other forms of communication inviting individuals or organizations to join or participate in the March 18, 2019 call on "international religious freedom," in which Secretary Pompeo participated; and 3. Any and all records setting forth the criteria or selection process for inviting individuals or organizations to join or participate in the March 18, 2019 call on "international religious freedom," in which Secretary Pompeo participated.

Stein Decl. ¶ 5.  CREW similarly requested "all documents referencing, concerning, or relating to the briefing call on international religious freedom held by Secretary . . . Pompeo on March 18, 2019."  Id. ¶ 12.

The plaintiffs separately filed these FOIA cases in this Court on May 8, 2019, see generally Compl. I, and July 17, 2019, see generally Compl. II.  Presumably, either following or contemporaneously with the filing of these suits, the Department identified the Office of the Executive Secretariat, the Bureau of Global Public Affairs, and the Office of International Religious Freedom as the offices likely to possess records responsive to the plaintiffs' requests, see Stein Decl. ¶¶ 19–22, and the "Department searched for [and located] responsive records in those offices[,]" Def.'s Facts ¶ 3; see Pls.' Facts I ¶ 3.

Regarding CREW, on September 30, 2019, the Department notified it "that [the Department] had located four records responsive to [CREW's] request[] and released two of those records in full and two in part."  Pls.' Facts II ¶ 15; see Def.'s Resp. to Pls.' Facts ¶ 15.  On November 15, 2019, the Department notified "CREW that it had located two additional records responsive to its request[] and released both records in part."  Pls.' Facts II ¶ 16; see Def.'s Resp. to Pls.' Facts ¶ 16.  On December 16, 2019, the Department notified "CREW that it had located 25 additional records responsive to its

request[] and released [eleven] of those records in full and [fourteen] in part." Pls.' Facts II ¶ 17; see Def.'s Resp. to Pls.' Facts ¶ 17. On January 17, 2020, the Department notified "CREW that it had located [forty-eight] additional records responsive to its request[] and released [twenty] of those records in full and [twenty-eight] in part. Pls.' Facts II ¶ 18; see Def.'s Resp. to Pls.' Facts ¶ 18. The Department "also re-released one document from a prior production, with some redactions lifted." Pls.' Facts II ¶ 18; see Def.'s Resp. to Pls.' Facts ¶ 18. On "March 9, 2020, [the Department] re-released one record to CREW in full that it had previously released in part." Pls.' Facts II ¶ 19; see Def.'s Resp. to Pls.' Facts ¶ 19. On July 14, 2020, the Department represents that it released another record in full that it had previously released in part, leaving a "final count [of thirty-five] records released in full and [forty-four] records released in part." Def.'s Resp. to Pls.' Facts ¶ 20.

Regarding the RCFP's request, no response was received from the Department "prior to [the RCFP's] lawsuit filed July 17, 2019." Pls.' Facts II ¶ 23; see Def.'s Resp. to Pls.' Facts ¶ 23. However, "[a]fter the initiation of the [RCFP]'s lawsuit, [the Department] released certain records and portions thereof in response to [the] RCFP's request[] and withheld other portions of those records[,]" Pls.' Facts II ¶ 24; see Def.'s Resp. to Pls.' Facts ¶ 24, resulting in the production of the same documents released to CREW, see Stein Decl. ¶¶ 7–11.

As to both plaintiffs' requests, the Department withheld portions of records pursuant to 5 U.S.C. § 552(b)(1) ("Exemption 1"), 5 U.S.C. § 552(b)(5) ("Exemption 5"), and 5 U.S.C. § 552(b)(6) ("Exemption 6"). See Pls.' Facts II ¶¶ 21, 25; Def.'s Resp. to Pls.' Facts ¶¶ 21, 25.

On February 27, 2020, the Court consolidated the plaintiffs' two cases.  See Order at 1–2 (Feb. 27, 2020), ECF No. 16.  On March 12, 2020, the Department filed its motion for summary judgment, see generally Def.'s Mot., on April 16, 2020, the plaintiffs filed their combined cross-motion for partial summary judgment and opposition to the defendant's motion for summary judgment, see generally Pls.' Mot.; Pls.' Mem., on July 15, 2020, the Department filed its opposition to the plaintiffs' motion for summary judgment and reply in support of its motion for summary judgment, see generally Def.'s Opp'n; Def.'s Reply, and on August 10, 2020, the plaintiffs filed their reply in support of their cross-motion for summary judgment, see generally Pls.' Reply.

## II.    STANDARD OF REVIEW

The Court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When ruling on a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party.  See Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true.  Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).  The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248), but must instead present specific facts "such that a reasonable [factfinder] could return a verdict for the non[-]moving party," Grosdidier v. Broad. Bd. of Governors, Chairman, 709 F.3d 19, 23 (D.C. Cir. 2013) (quoting Anderson, 477 U.S. at 248).  Thus, "[c]onclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research

Grp. v. Food & Drug Admin., 185 F.3d 898, 908 (D.C. Cir. 1999) (Garland, J., concurring) (alteration in original) (quoting Exxon Corp. v. Fed. Trade Comm'n, 663 F.2d 120, 127 (D.C. Cir. 1980)).  If the Court concludes that "the non[-]moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Thus, when "ruling on cross-motions for summary judgment, the [C]ourt shall grant summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed."  Shays v. Fed. Electoral Comm'n, 424 F. Supp. 2d 100, 109 (D.D.C. 2006).

"FOIA cases typically are resolved on motions for summary judgment."  Ortiz v. U.S. Dep't of Justice, 67 F. Supp. 3d 109, 116 (D.D.C. 2014); see also Defs. of Wildlife v. U.S. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009).  The "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions."  Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001); see also Wash. Post Co. v. U.S. Dep't of Justice, 863 F.2d 96, 101 (D.C. Cir. 1988) ("[The] FOIA is to be interpreted with a presumption favoring disclosure and exemptions are to be construed narrowly.").  In a FOIA action, the agency has "th[e] burden of demonstrating that the withheld documents are exempt from disclosure[,]" Boyd v. U.S. Dep't of Justice, 475 F.3d 381, 385 (D.C. Cir. 2007), and this burden "cannot be met by mere conclusory statements," Wash. Post Co., 863 F.2d at 101.  "The agency may meet this burden by filing affidavits describing the material withheld and the manner in which it falls within the exemption claimed[,]" King v. U.S. Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987), and by "show[ing]

how release of the particular material would have the adverse consequence that the Act seeks to guard against," Wash. Post Co., 863 F.2d at 101.

Courts will grant summary judgment to the agency in a FOIA case only if the agency can prove "that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (quoting Greenberg v. U.S. Dep't of Treasury, 10 F. Supp. 2d 3, 11 (D.D.C. 1998)).  Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt from [disclosure].'" Students Against Genocide, 257 F.3d at 833 (first alteration in original) (quoting Goland v. Cent. Intelligence Agency, 607 F.2d 339, 352 (D.C. Cir. 1978)).  Even when the requester files a motion for summary judgment, the government "ultimately [has] the onus of proving that the [documents] are exempt from disclosure." Pub. Citizen Health Research Grp., 185 F.3d at 904 (alterations in original) (quoting Nat'l Ass'n of Gov't Emps. v. Campbell, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).  However, "[t]he burden upon the requester is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" Id. at 904–05.

In 2016, Congress amended the FOIA to add a "foreseeable harm" requirement, which allows withholding of information "only if the agency reasonably foresees that disclosure would harm an interest protected by an exemption" or the "disclosure is prohibited by law." 5 U.S.C. § 552(a)(8)(A)(i).  "Stated differently, pursuant to the FOIA Improvement Act, an agency must release a record—even if it falls within a FOIA exemption—if releasing the record would not

reasonably harm an exemption-protected interest" and if the law does not prohibit the disclosure.

Judicial Watch, Inc. v. U.S. Dep't of Com., 375 F. Supp. 3d 93, 98 (D.D.C. 2019) (quoting

Rosenberg v. U.S. Dep't of Def., 342 F. Supp. 3d 62, 73 (D.D.C. 2018)).

## III.    ANALYSIS

The Department argues that it is entitled to summary judgment because its search was

adequate, and its withholdings and redactions were appropriate.  See Def.'s Mem. at 1.

However, the plaintiffs argue in their cross-motion for partial summary judgment that the

Department's invocations of Exemptions 5 and 6 were improper.  See Pls.' Mem. at 1.

According to the plaintiffs, "[a]s to Exemption 5, [the Department] has invoked the deliberative

process privilege to improperly withhold communications that are both post-decisional and non-

deliberative, as well as communications about [the Department's] interactions with the press that

are unrelated to any policy-oriented judgments."  Id.  The plaintiffs also assert, as to Exemption

5, that the Department "has [ ] failed to provide basic details needed to evaluate its deliberative

process claims."  Id.  Furthermore, the plaintiffs contend that "[a]s to Exemption 6, [the

Department] is improperly withholding . . . portions of email addresses[.]"  Id.  Finally, as to

both Exemption 5 and 6, the plaintiffs argue that the Department "has failed to meet its burden

under the FOIA Improvement Act of 2016 to show that disclosure [for certain withholdings]

would foreseeably harm an exemption-protected interest."  Id. at 2.  The Court will therefore

address the parties' Exemption 5 and 6 assertions in turn, followed by an analysis of

segregability.[3]

## A.    Exemption 5

Exemption 5 protects from disclosure "inter-agency or intra-agency memorand[a] or

---

[3] "Both plaintiffs have indicated affirmatively that they are not challenging the [ ] Department's search or its redactions of classified material or telephone numbers."  Def.'s Mem. at 13.

letters that would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  To be covered by Exemption 5, a document's "source must be a [g]overnment agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  U.S. Dep't of the Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).  "[T]he parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery; if material is not 'available' in discovery, it may be withheld from FOIA requesters."  Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996).  Thus, Exemption 5 covers "those documents, and only those documents, normally privileged in the civil discovery context," which includes, inter alia, documents covered by the deliberative process privilege.  Citizens for Responsibility & Ethics in Wash. v. Nat'l Archives & Records Admin., 715 F. Supp. 2d 134, 138 (D.D.C. 2010) (quoting Nat'l Labor Relations Bd. v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975)).

Here, the Department invokes the deliberative process privilege in regard to "withheld material that contained discussions among staff regarding planning the technical and substantive details of the conference call [at issue], including debating whom to invite to participate, preparing responses for others who asked to participate, changes to the plans, and the strategy and proposed topics for discussion on the call."  Def.'s Mem. at 6 (citing Stein Decl. ¶¶ 29, 38–39, 41–43, 46–50, 52–53).  In response, the plaintiffs argue that the Department "is withholding portions of [fifteen] records under Exemption 5[,]" Pls.' Mem. at 7, for which the Department "has fallen short of its burden [to justify] in several respects[,]"  id. at 8.

"The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and

front[-]page news[.]"  Klamath Water Users Protective Ass'n, 532 U.S. at 8–9.  "The privilege serves to preserve the 'open and frank discussion' necessary for effective agency decision[]making[, and it] protects 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'"  Abtew v. U.S. Dep't of Homeland Security, 808 F.3d 895, 898 (D.C. Cir. 2015) (first quoting Klamath Water Users Protective Ass'n, 532 U.S. at 9; then quoting NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975)).  "To be exempt from disclosure under the deliberative process privilege, the agency must show that the information is both (1) 'predecisional' and (2) 'deliberative.'"  Cleveland v. U.S. Dep't of State, 128 F. Supp. 3d 284, 298 (D.D.C. 2015) (Walton, J.) (quoting Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002)).  "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,' rather than to support a decision already made."  Petroleum Info. Corp. v. U.S. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)); see also Senate of P.R. v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987) ("A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates.").  "[A] document is deliberative if it is 'a part of the agency give-and-take—of the deliberative process—by which the decision itself is made."  Abtew, 808 F.3d at 899 (quoting Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C. Cir. 1975)); see also Pub. Emps. for Envtl. Responsibility v. EPA, 213 F. Supp. 3d 1, 11 (D.D.C. 2016) ("The 'key question' in determining whether the material is deliberative in nature 'is whether disclosure of the information would discourage candid discussion within the agency.'" (quoting Access Reports v. U.S. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991))).

When invoking the deliberative process privilege in the Exemption 5 context, "[t]he agency must establish 'what deliberative process is involved, and the role played by the documents in issue in the course of that process.'" <u>Senate of P.R.</u>, 823 F.2d at 585–86 (quoting <u>Coastal States Gas Corp. v. Dep't of Energy</u>, 617 F.2d 854, 868 (D.C. Cir. 1980)). "The need to describe each withheld document when Exemption 5 is at issue is particularly acute because 'the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process.'" <u>Pub. Emps. for Envtl. Responsibility</u>, 213 F. Supp. 3d at 11 (quoting <u>Animal Legal Def. Fund, Inc. v. U.S. Dep't of Air Force</u>, 44 F. Supp. 2d 295, 299 (D.D.C. 1999)). Accordingly, "to sustain its burden of showing that records were properly withheld under Exemption 5, an agency must provide in its declaration . . . precisely tailored explanations for each withheld record at issue." <u>Nat'l Sec. Counselors v. Cent. Intelligence Agency</u>, 960 F. Supp. 2d 101, 188 (D.D.C. 2013). "[T]he agency must [also] describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents.'" <u>Elec. Frontier Found. v. U.S. Dep't of Justice</u>, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (Walton, J.) (quoting <u>Arthur Andersen & Co. v. Internal Revenue Serv.</u>, 679 F.2d 254, 258 (D.C. Cir. 1982)). "If the agency does not provide 'the minimal information necessary to make a determination concerning applicability of the deliberative process privilege[,]' then the court should deny the agency summary judgment." <u>Hunton & Williams LLP v. Envtl Protection Agency</u>, 248 F. Supp. 3d 220, 241 (D.D.C. 2017) (quoting <u>Elec. Frontier Found.</u>, 826 F. Supp. 2d at 173).

The plaintiffs challenge two specific aspects of the Department's Exemption 5 deliberative process privilege withholdings: (1) the Department's purported failure to provide details on the decisionmaking authority of the employees involved in the withheld

communications, see Pls.' Mem. at 8–9; and (2) details of specific document withholdings, id. at 9–13.  Furthermore, as to the each of the disputed specific document withholdings, the plaintiffs challenge the Department's purported failure to satisfy the FOIA's foreseeable harm requirement, id. at 13–19.  The Court will address each of these challenges in turn.

### 1.   The Defendants' Purported Failure to Provide Decisionmaking Authority Details

First, the plaintiffs argue that the Department "disregarded [Exemption 5 and deliberative process privilege] principles" by "ma[king] no effort to identify 'the relationship between the author and recipients of [any] document," which "is the case for every one of the agency's deliberative process withholdings."  Id. at 8–9.  This Circuit has explained that:

> [a] key feature under both the "predecisional" and "deliberative" criteria is the relation between the author and recipients of the document.  A document from a junior to a senior is likely to reflect his or her own subjective opinions and will clearly have no binding effect on the recipient.  By contrast, one moving from senior to junior is far more likely to manifest decisionmaking authority and to be the denouement of the decisionmaking rather than part of its give-and-take.

Access Reps. v. U.S. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991).

However, the Department, through the Second Declaration of Eric F. Stein that was filed contemporaneously with the Department's rely brief, has now made efforts in this regard by "identif[ying several of] the agency employees involved in the email chains[.]"  Def.'s Reply at 3 (citing 2d Stein Decl. ¶ 6).  Specifically, the Department identified "Robert Greenan, the Director of the Office of Press Relations, Andrew Laine, the Deputy Director of the Office of Press Relations, as well as Drew Bailey and Kuros Ghaffari, Media Outreach Officers in the Office of Press Relations."  Id. (citing 2d Stein Decl. ¶ 6).  Furthermore, the Second Stein Declaration explains the press-relations staffs' role in the decisionmaking process and the process the Office of Press Operations utilizes in exercising its media related authority.  See 2d Stein Decl. ¶ 4.  In the email communications identified by the plaintiffs with Exemption 5 redactions, the Office of

Press Relations and the identified employees make up most, but not all, of the senders and direct "To" recipients.  See Weeks Decl., Exhibit ("Ex.") F (C06828153); id., Ex. H (C06827961); id., Ex. L (C06828154);[4] id., Ex. M (C06827968); id., Ex. N (C06827969); id., Ex. O (C06827948); id., Ex. P (C06827949); id., Ex. Q (C06827453); id., Ex. R (C06827455); id., Ex. T (C06827940).

This subsequent disclosure is sufficient to foreclose the Court from totally concluding that the Department's Exemption 5 redactions were inappropriate due to a purported failure to identify the relationships between communicators.  Ultimately, "[a] document's context is the sine qua non of the [C]ourt's assessment of whether or not [a] document is . . . deliberative[,]" Conservation Force v. Jewell, 66 F. Supp. 3d 46, 61 (D.D.C. 2014), aff'd, No. 15-5131, 2015 WL 9309920 (D.C. Cir. Dec. 4, 2015), and the now-available information demonstrates that the Department has not categorically "fail[ed] to provide necessary contextual information about the particular decisionmaking processes to which the [communications] contributed, and the role [those communications] played in those processes."[5]  Elec. Frontier Found. v. U.S. Dep't of Justice, 826 F. Supp. 2d 157, 168 (D.D.C. 2011) (citing Hinckley v. United States, 140 F.3d 277, 284 (D.C. Cir. 1998) ("The agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process.")).  Having concluded that the Department has provided sufficient information regarding the decisionmaking authority of the employees involved in the withheld communications, the Court will now turn to the plaintiffs' specific Exemption 5 challenges.

---

[4] The Department represents that this document was released in full to the plaintiffs on July 14, 2020.  See 2d Stein Decl. ¶ 11.

[5] The plaintiffs have not addressed their broader sender-receiver relationship disclosure argument after the filing of the Department's second declaration.  See generally Pls.' Reply.

2. **The Plaintiffs' Challenges to Specific Exemption 5 Withholdings**

The plaintiffs' first specific challenge, see Pls.' Mem at 9, concerns a chain of emails between Ghaffari and the agency's "Operations Center" regarding logistical arrangements "for [the scheduling of an] afternoon's media calls," including the media briefing call at issue, Weeks Decl., Ex. F (C06828153).  The plaintiffs challenge the following redactions of an individual's name from these emails pursuant to Exemption 5[6]—"[p]lease advise whether [redacted] should be included on any of the[se] calls[,]" and "[redacted] does not need to be included on any of the calls."[7]  Id.  The Department argues that "[s]electing the media outlets and participants is both predecisional (because it necessarily precedes the call) and inherently deliberative until the call takes place[.]"  Def.'s Reply at 7.

Although the communication preceded the call, see 2d Stein Decl. ¶ 5, the reference to the individual whose name was redacted was not deliberative.  As the plaintiffs point out, "the Operations Center was not part of the '"agency give-and-take of the deliberative process by which the decision . . . [was] made."'  Pls.' Reply at 3 (quoting Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 868 (D.C. Cir. 1980)) (emphasis in original).  This email chain concerns discussions purely related to an administrative matter that occurred for the purpose of determining, categorically, who was invited to the call, and the Operation Center simply executed the Press Office's instructions.  See Weeks Decl., Ex. F (C06828153) ("Understood. We will connect the calls as outlined below. . . . Thank you.  Understood.").  This constitutes

---

[6] There are several additional redactions to this document made pursuant to Exemptions 5 and 6.  The plaintiffs do not challenge these redactions, which appear to be specific phone numbers.

[7] The redaction of this individual's name is accompanied by "B5"  and "B6" notations on the copies of the documents provided to the plaintiffs, indicating that the name was redacted under both Exemption 5 and, presumably, Exemption 6.  Weeks Decl., Ex. F (C06828153).  However, the Department's declarations clearly indicate that the Department is now basing its withholding solely on Exemption 5.  See Stein Decl. ¶ 38; 2d Stein Decl. ¶ 5.

"the denouement of the decision making rather than part of its give-and-take."  Access Reps. v. Dep't of Just., 926 F.2d 1192, 1195 (D.C. Cir. 1991).

Despite what the Court just concluded, the Department contends, without reference to any authority, that the communication falls within the deliberative process privilege because it involved "[s]electing the media outlets and participants[,] [which] is both predecisional[—]because it necessarily precedes the call[—]and inherently deliberative until the call takes place[.]"  Def. Reply at 7.  This argument blurs the line between the predecisional and deliberative considerations that the Court must make.  Even if the agency's final determination only occurred at the onset of the call, that does not make the email inherently deliberative.  See Ctr. for Pub. Integrity v. Fed. Election Comm'n, 332 F. Supp. 3d 174, 180 (D.D.C. 2018) ("A meeting agenda prepared before the meeting is necessarily predecisional and inherently deliberative in that staff are suggesting the topics to be discussed at the meeting." (emphasis added)).  Indeed, the single question and definitive answer here in no way equate to "the type of back-and-forth exchange of ideas, constructive feedback, and internal debate . . . that sits at the heart of the deliberative process privilege."  Reps. Comm. for Freedom of the Press v. Fed. Bureau of Investigation, 3 F.4th 350, 364 (D.C. Cir. 2021).

Furthermore, it is difficult to see how the release of this administrative exchange will discourage the free exchange of ideas within the agency.  Indeed, as noted earlier, "[t]he 'key question' in determining whether the material is deliberative in nature 'is whether disclosure of the information would discourage candid discussion within the agency.'"  Pub. Emps. for Envtl. Responsibility v. Envtl. Protection Agency, 213 F. Supp. 3d 1, 11 (D.D.C. 2016) (quoting Access Reports v. U.S. Dep't of Justice, 926 F.2d 1192, 1195 (D.C. Cir. 1991)).  And, as indicated by the information contained in the relevant email chain, there was no "exchange of

ideas" here at all.  In sum, because the Department has not shown that this communication meets the threshold of being deliberative, the Court must conclude that the redacted name of the individual at issue does not fall within the deliberative process privilege and was inappropriately withheld pursuant to Exemption 5.

The plaintiffs' second challenge, see Pls.' Mem. at 10, concerns two emails from the Department's "Operations Center that list the confirmed and pending calls on Secretary Pompeo's schedule."  Stein Decl. ¶ 39.  The Department represents it is withholding "the calls under the 'Pending' and 'Ops is tracking the following calls' headings" because the information is "predecisional and deliberative with regard to the Secretary of State's actual schedule and the calls he actually took[.]"  Id.  The Department also asserts that the pending call list is protected under Exemption 5 because the Secretary's pending schedule amounts to a "draft" schedule, and "[e]ven though the records may not explain the reasons for particular changes, they fall within the privilege because the facts contained in them reveal the deliberations and they are part of the continuous process of setting the Secretary's schedule[.]"  Def. Reply at 7–8.  The Court agrees with the defendants.

The plaintiffs contend that the pending call list does not qualify as deliberative because it is merely a list of factual materials, see Pls.' Mem. at 10–11, but this argument is unpersuasive.  Generally, the deliberative process privilege does not protect factual material.  See Gosen v. U. S. Citizenship & Immigr. Servs., 118 F. Supp. 3d 232, 243 (D.D.C. 2015).  However, factual material may sometimes be withheld if "its disclosure would expose the deliberative process," United Am. Fin., Inc. v. Potter, 531 F.Supp.2d 29, 45 (D.D.C.2008); see also Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1539–40 (D.C.Cir.1993) (suggesting that factual material "assembled through an exercise of judgment" may be protected, where a mere factual

"inventory, presented in chronological order" would not be).  The changes made to the

Secretary's schedule would become evident if the non-confirmed calls on the schedule, which

the Court agrees is comparable to a draft schedule consisting of "unconfirmed calls reflecting the

deliberative process for reaching [a] final schedule," Def.'s Reply at 8, were released.  While

these records would not explain the reasons for a particular change, the changes themselves

would reveal the internal deliberations made by Department employees regarding the calls in

which the Secretary should participate and, therefore, their preconceived importance by the

Secretary, placing the preliminary schedule squarely within the deliberative process privilege.

See Gosen v. U.S. Citizenship & Immigration Servs., 118 F. Supp. 3d 232, 243 (D.D.C. 2015).

The plaintiffs further argue that the Department must disclose which potential calls that

were being considered were ultimately taken by the Secretary.  Pls.' Reply at 5.  The Court does

not disagree with this position; however, the Court agrees that "the Department has demonstrated

that it released the information about confirmed calls that took place and limited its withholdings

to the unconfirmed calls[.]"  Def.'s Reply at 8 (citing 2d Stein Decl. ¶ 7).  Asking the

Department for more constitutes "[p]eeking behind [ ] to discern what portions of [the schedule]

drafts were and were not incorporated[, which] would reveal the very deliberative process that

the privilege protects."  Reps. Comm. for Freedom of the Press, 3 F.4th at 365 (citing Russell v.

Dep't of the Air Force, 682 F.2d 1045, 1049 (D.C. Cir. 1982)).

Finally, the plaintiffs argue that the Department has not sufficiently described the

foreseeable harm that would result from releasing the redacted document.  See Pls.' Mem. at 13–

14. Congress adopted the foreseeable harm requirement to prevent "the withholding of materials

unless the agency can 'articulate both the nature of the harm [that would result from its release]

and the link between the specified harm and specific information contained in the material

withheld.'"  <u>Reps. Comm. for Freedom of the Press</u>, 3 F.4th at 369 (quoting H.R. Rep. No. 114-391, at 9 (2016)).  Thus, the foreseeable harm requirement "impose[s] an independent and meaningful burden on agencies."  <u>Ctr. for Investigative Reporting v. U. S. Customs & Border Prot.</u>, 436 F. Supp. 3d 90, 106 (D.D.C. 2019) (citation omitted).  Agencies can "satisfy that burden on a category-by-category basis rather than a document-by document basis," yet, "the basis and likelihood of that harm must be independently demonstrated for each category." <u>Reps. Comm. for Freedom of the Press</u>, 3 F.4th at 369.  Further, "the government must do more than perfunctorily state that disclosure of all the withheld information—regardless of category or substance—'would jeopardize the free exchange of information.'" <u>Rosenberg v. U.S. Dep't of Def.</u>, 342 F. Supp. 3d 62, 79 (D.D.C. 2018).  The agency explanation should therefore be a "focused and concrete demonstration of why disclosure of the particular type of material at issue will, in the specific context of the agency action at issue, actually impede those same agency deliberations going forward."  <u>Reps. Comm. for Freedom of the Press</u>, 3 F.4th at 370.  Stated differently, the inquiry is whether the agency sufficiently "explain[s] how disclosure 'would'—not 'could'—adversely impair internal deliberations.  <u>Id.</u> at 369–70 (quoting <u>Machado Amadis v. United States Dep't of State</u>, 971 F.3d 364, 371 (D.C. Cir. 2020)).

Here, the Department has demonstrated the specific foreseeable harm that would result from the release of the pending call list.  The Department has explained that "[r]elease of information about tentatively scheduled, non-confirmed calls could reveal information about the relative importance the Secretary places on particular issues or particular discussions."  2d Stein Decl. ¶ 7.  For instance, as the Department notes, if a "call [was] tentatively scheduled with one foreign official[] but was later replaced by a call with a different foreign official, releasing the tentative schedule could reveal the relative importance the Secretary of State places on

conversations with those officials." Id.  The Court agrees that disclosure would reveal not only

changes in the Secretary's schedule, but also some of the thought processes by which he or she

conducts the government's foreign policy.  Accordingly, the Department has satisfied its burden

under the foreseeable harm standard.

The plaintiffs' final Exemption 5 challenge,[8] see Pls.' Mem. at 11–13, concerns two

chains of emails between Department employees.  In the first email chain, Department

employees "discuss the invitation list for the [March 18, 2019] call [that is the subject of the

plaintiffs' FOIA requests] and how to respond to individuals or organizations who ask to

participate in the call but were not on the invitation list."  Stein Decl. ¶ 42.  The second email

chain contains an unredacted inquiry from a Washington Post reporter who was requesting to

join the call, which resulted in that email being forwarded to other Department employees, one

of whom, in a redacted portion of the email chain, "comments on the inquiry and proposes a

response to provide [to] the Washington Post correspondent."  Id. ¶ 43.

The plaintiffs contend that these documents are "communications solely concerning [the]

agency's proposed response to inquiries from the press and other external entities, with no link to

matters of substantive agency policy or other policy-oriented judgments, [and] are[, therefore,]

not protected."  Pls.' Mem. at 11.  However, "[t]he overwhelming consensus among judges in

this District is that the [deliberative process] privilege protects agency deliberations about public

statements []."  Am. Ctr. for L. & Just. v. U. S. Dep't of Justice, 325 F. Supp. 3d 162, 171–72

(D.D.C. 2018).  The rationale underlying this position is "if agency deliberations about public

statements were FOIA-able, then agencies would be hamstrung in their dealings with the press,

---

[8] The plaintiffs also challenge the Exemption 5 redaction of "a March 18, 2019 email with the subject line 'WSJ – Donati,'" Pls.' Mem. at 13; see also Weeks Decl., Ex. L (C06828154), but, as the Court noted previously, see supra n.4, that document has since been "released . . . in full."  Def.'s Reply at 2 (citing 2d Stein Decl. ¶ 11).

defeating the very transparency [the] FOIA aims to foster." Id.; see also Comm. on Oversight & Gov't Reform v. Lynch, 156 F. Supp. 3d 101, 111 (D.D.C. 2016) ("[I]nternal deliberations about public relations efforts are not simply routine operational decisions: they are 'deliberations about policy, even if they involve "massaging" the agency's public image.'" (quoting ICM Registry, LLC v. U.S. Dep't of Commerce, 538 F.Supp.2d 130, 136 (D.D.C.2008)).  However, agencies must provide sufficient context about the particular press-related deliberations at issue and cannot rely solely on conclusory labels—such as a "draft press release[.]"  Heffernan v. Azar, 317 F. Supp. 3d 94, 125–128 (D.D.C. 2018) (Walton, J.).

Thus, the Court concludes that the Department's explanations satisfy its burden of demonstrating that the deliberative process privilege applies to the withholdings in these documents.  The unredacted portion of these emails contains a particular media inquiry that resulted in the redacted discussion by Department officials about how to respond to the inquiry. See Weeks Decl., Ex. M (C06827968); id., Ex. N (C06827969); Stein Decl. ¶ 42 (confirming that the redactions cover portions of emails containing "employee's discussions and recommendations about how to respond" to this inquiry from a member of the press).  Therefore, the redacted communications depict the "give-and-take of the consultative process[,]" Coastal States, 617 F.2d at 866, regarding how the Department should respond to media inquiries concerning the Secretary's call.

Furthermore, regarding the sufficiency of the context provided by the Department, the plaintiffs are incorrect to assert that "communications solely concerning an agency's proposed response to inquiries from the press and other external entities" are not protected under the deliberative process privilege.  Pls.' Mem. at 11.  Certainly, agency explanations with "broad and vague descriptions" of how a particular document constitutes a press response are not sufficient

for the Court to "determin[e] whether the privilege applies."  See Heffernan v. Azar, 317 F.

Supp. 3d 94, 126 (D.D.C. 2018).  But the Department's descriptions here are not deficient.  The

Department represents that

> [i]n the emails, Department employees discuss the invitation list for the call and
> how to respond to individuals or organizations who ask to participate in the call
> but were not on the invitation list . . . .  Release of these employees' discussion
> and recommendations about how to respond to inquiries about the invitation list
> . . . would reveal employees' preliminary thoughts and ideas and could [affect]
> . . . recommendations regarding the Department's response to media inquiries
> about calls with the Secretary of State.

Stein Decl. ¶ 42.  The Department further represents that "a Department employee comment[ed]

on the inquiry and propose[d] a response to provide [to] the [inquiring] correspondent."  Id. ¶ 43.

Based on these descriptions of the redactions, the Court agrees with the Department that this

information was properly withheld under Exemption 5.  See Comm. on Oversight & Gov't

Reform, 156 F. Supp. 3d at 111 (records reflecting internal deliberation of the Attorney General

over how to respond to Congressional and media inquiries were protected under deliberate

process privilege); Judicial Watch v. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 208 (D.D.C.

2010) (holding that documents concerning "how to respond to on-going inquiries from the press

and Congress" about the entry of a government witness and Mexican national into the United

States fell under the deliberative process privilege); Citizens for Responsibility & Ethics in

Wash. v. U.S. Dep't of Labor, 478 F. Supp. 2d 77, 83 (D.D.C.2007) (finding that the deliberative

process privilege covered email messages discussing the agency's response to news article);

Judicial Watch, Inc. v. Reno, No. 00-0723, 2001 WL 1902811 (D.D.C. Mar. 30, 2001), at *3

(holding that deliberations about "how to handle press inquiries and other public relations issues"

are covered by Exemption 5).

The Court also concludes that the Department reasonably foresaw that disclosure would harm an interest protected by the deliberative process privilege, and thus satisfied its burden under the statute.  The deliberative process privilege protects "debate and candid consideration of alternatives within an agency," which improves agency decisionmaking.  <u>Jordan v. Dep't of Justice</u>, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc).  After all, "experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decision[]making process."  <u>Nat'l Lab. Relations Bd. v. Sears, Roebuck & Co.</u>, 421 U.S. 132, 150-51(1975) (quotation marks omitted); <u>see also</u> <u>Dep't of Interior v. Klamath Water Users Protective Ass'n</u>, 532 U.S. 1, 8-9 (2001) (indicating that the deliberative process privilege "rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery").  As the Court previously indicated, the Department adequately explained that full disclosure of the email chain would "reasonably be expected to have a chilling effect on the open and frank discussion of ideas and recommendations regarding the Department's response to media inquires about calls with the Secretary of State."  Stein Decl. ¶¶ 42, 43. This lack of candor "would impede the free-flowing discussion of issues necessary to reach a well-reasoned decision and execute a well-crafted press strategy."  2d Stein Decl. ¶ 4.  The plaintiffs also contend that agencies, to justify withholding records under the FOIA's foreseeable-harm provision, cannot simply rely on "the general rationale for the deliberative process privilege[.]"  Pls.' Mem. at 19.  But that is not the case here, as the Department specifically focused on the nature of the discussions in these emails, determined that disclosure of that information would chill future

internal discussions, and, ultimately, sufficiently explained a foreseeable harm that would result from disclosing the redacted information.[9]

For these reasons, the Court concludes that, except for the identity of the name of the redacted individual referenced in the chain of emails between Ghaffari and the Department's "Operations Center" concerning the logistical arrangements "for [the March 18, 2019] afternoon's media calls," Weeks Decl., Ex. F (C06828153), the Department's Exemption 5 withholdings were warranted, and the Court will therefore grant summary judgement to the Department on its Exemption 5 withholdings.  Regarding the aforementioned identity of the name of the redacted individual, the Court will grant partial summary judgment to the plaintiffs.

Having addressed the plaintiffs' challenges to the Department's Exemption 5 withholdings, the Court will now turn to the plaintiffs' objections to the Department's invocation of Exemption 6 as the basis for its withholdings.

**B.      Exemption 6**

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).[10]  Exemption 6 is designed "to protect individuals from the injury and

---

[9] The plaintiffs further request that the Court "review th[ese] withholdings in camera to determine whether the foreseeable harm requirement is satisfied."  Pls. Reply at 9.  As the Circuit has recognized, "[t]he decision whether to perform in camera inspection is left to the 'broad discretion of [a] trial judge,'" Spirko v. U.S. Postal Serv., 147 F.3d 992, 996 (D.C. Cir. 1998) (quoting Lam Lek Chong v. U.S. Drug Enf't Admin., 929 F.2d 729, 735 (D.C. Cir. 1991)), and "[t]he ultimate criterion is simply . . . [w]hether the district judge believes that [i]n camera inspection is needed in order to make a responsible de novo determination on the claims of exemption," Ray v. Turner, 587 F.2d 1187, 1195 (D.C. Cir. 1978).  Although the documents in this case make up a relatively small universe, the Court concludes that it is unnecessary to conduct in camera review.  The minimally redacted records already before the Court and the information provided by the Department's two declarations regarding the redactions adequately provide justification for the withholdings.  See generally Weeks Decl., Stein Decl., 2d Stein Decl.

[10] The redaction of the individual's name in Exhibit F to the Weeks Declaration—C06828153, which was previously discussed by the Court above and by the parties in their Exemption 5 arguments—is accompanied by both "B5" and "B6" notations on the copies of the documents provided by the plaintiffs, indicating that the name was redacted under both Exemption 5 and, presumably, Exemption 6.  Weeks Decl., Ex. F (C06828153).  However, as noted

(continued . . .)

embarrassment that can result from the unnecessary disclosure of personal information"

maintained in government records, U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 599

(1982), regardless of "the label [on] the file," id. at 601 (citation omitted).  "The Court's first

task in assessing whether non-disclosure is warranted [pursuant to Exemption 6] is to determine

whether the responsive records are personal, medical or similar files."  Houser v. U.S. Dep't of

Health & Hum. Servs., 486 F. Supp. 3d 104, 115 (D.D.C. 2020) (Walton, J.) (citing Multi Ag.

Media LLC v. Dep't of Agric., 515 F.3d 1224, 1228 (D.C. Cir. 2008)).  Next, the Court must

determine whether disclosure of the third-party information "would constitute a clearly

unwarranted invasion of personal privacy."  Multi Ag. Media LLC, 515 F.3d at 1228 (quoting 5

U.S.C. § 552(b)(6)).  "This second inquiry requires [the Court] to balance the privacy interest

that would be compromised by disclosure against any public interest in the requested

information."  Id. (citations omitted).  Here, the only relevant public interest the Court must

consider is the underlying purpose for the enactment of the FOIA: to "shed[ ] light on an

agency's performance of its statutory duties[.]"  U.S. Dep't of Justice v. Reporters Comm. for

Freedom of the Press, 489 U.S. 749, 762 (1989).

In this case, the plaintiffs challenge a narrow category of Exemption 6 withholdings,

namely, the Department's redaction of portions of several email addresses.  See Pls.' Mem. at

21–26.  Specifically, the plaintiffs challenged redactions of parts of the email addresses for (1)

former Secretary of State Pompeo, (2) former Deputy Secretary Sullivan, and (3) Andy Schacter,

a Department employee. Id. at 19–20.  The plaintiffs contend these redactions were

---

(. . . continued)

earlier, the Department's declarations confirm that the Department is basing this withholding purely on Exemption
5.  See Stein Decl. ¶ 38; 2d Stein Decl. ¶ 5.  In any event, none of the information provided by the Department
regarding the individual's name, as well as the clear context of the individual's name in the document, demonstrate
that the document is a "personnel [or] medical file[ or] similar file[] the disclosure of which would constitute a
clearly unwarranted invasion of personal privacy[.]"  5 U.S.C. § 552(b)(6).

inappropriate because the Department failed to demonstrate: (1) sufficient invasion of privacy to justify non-disclosure, see id. at 21–24; (2) a countervailing interest to the "significant public interest in the withheld" portions of the email addresses, id. at 24–25; and (3) foreseeable harm, id. at 25–26.  The Court will address the arguments relating to each of these three email addresses in turn.

### 1.  Former Secretary Pompeo's Email Address

The plaintiff originally argued that the Department's Exemption 6 withholdings were inappropriate as to the domain names—the segments of the email addresses following the "@" symbol—of all three email addresses' depicted in certain documents.  See id. at 21–26. However, the Department represents that, as "to one document including emails to and from Secretary Pompeo[,]" Def.'s Reply at 12 (citing Weeks Decl., Ex. S (C06827829)), "the email domain does not appear on the unredacted version of the document[, and t]he only information under the redaction is the username associated with Secretary Pompeo's '@state.gov' email address[,]" 2d Stein Decl. ¶ 9.  In response, the plaintiffs contend that the Department is giving "contradictory representations [that] give rise to a genuine issue of material fact, precluding summary judgment for [the Department] on this point."  Pls.' Reply at 10.

The Court disagrees that a genuine dispute of material fact precluding summary judgment exists regarding the redaction of Secretary Pompeo's email address.  First, contrary to the plaintiffs' position, the Department's representations are not contradictory.  The Department's initial representation that the redaction was of "the Secretary of State's official government email address," Stein Decl. ¶ 40, is not inconsistent with their later clarification that the username was the specific part of the email address included in the document, see 2d Stein Decl. ¶ 9.  Second, the other email participants listed in the pertinent document also do not indicate their addresses' attached domain names.  See Weeks Decl., Ex. S (C06827829) (listing "Ellington, Victoria L"

and "Kenna, Lisa D").  Thus, the Department's representation that it redacted Secretary

Pompeo's email username is not sufficiently "broad and vague" to preclude summary judgment.

See Prop. of the People, Inc. v. Off. of Mgmt. & Budget, 330 F. Supp. 3d 373, 388 (D.D.C.

2018).

      The plaintiffs also argue that the Department "makes no argument in its brief or in the

[Department's] [s]econd [ ] [d]eclaration that Secretary Pompeo has a substantial privacy interest

in a 'username associated with' his email address, once stripped of the domain."  Pls.'

Reply at 10.  The Court, again, disagrees.[11]  The Department provides justifications for its

redaction in its first declaration, see Stein Decl. ¶ 40, and its original memorandum, see Def.'s

Mem. at 11.  As to those justifications, the Court agrees with the Department that the redaction

of Secretary Pompeo's email address, even if just the username was present, was appropriate.

      The analysis for Exemption 6 "requires, first, a determination of whether the document in

question qualifies as 'a personnel, medical, or similar file[].'"  Judicial Watch v. Navy,

25 F. Supp. 3d 131, 140 (D.D.C. 2014) (alteration in original) (quoting Multi Ag Media LLC v.

Dep't of Agric., 515 F.3d 1224, 1227–28 (D.C. Cir. 2008)).  For purposes of this determination,

the term "similar files" is "construed broadly and is 'intended to cover detailed Government

records on an individual which can be identified as applying to that individual.'"  Gov't

Accountability Project v. U.S. Dep't of State, 699 F. Supp. 2d 97, 105–06 (D.D.C. 2010)

(quoting Dep't of State v. Wash. Post. Co., 456 U.S. 595, 602 (1982)).  This also protects "bits of

personal information, such as names and addresses, the release of which would create a palpable

threat to privacy."  Prison Legal News v. Samuels, 787 F.3d 1142, 1147 (D.C. Cir. 2015)

---

[11] Regardless of whether the Department addressed the privacy interest of email usernames or not, it would have been difficult for the Department to foresee that it would need to specifically address the privacy interests associated with an email username when the plaintiffs did not raise that issue until they did so in their final reply brief.  See Pls.' Mem. at 21–22 (challenging the redaction of domain names only).

(alteration and quotation marks omitted).  These "bits of personal information" are protected

only if they "can be identified as applying to that individual."  See U.S. Dep't of State v. Wash.

Post Co., 456 U.S. 595, 602 (1982) (citing H.R. Rep. No. 89-1497, at 11 (1966), as reprinted in

1966 U.S.C.C.A.N. 2418, 2428).

      Other courts in this district have recognized that email addresses generally fall within the

definition of "similar files" for the purposes of Exemption 6 and that email address owners have

a strong privacy interest in ensuring that they are not subjected to unwanted communications

resulting from the disclosure of their email address.  See Gov't Accountability Project v. U.S.

Dep't of State, 699 F. Supp. 2d 97, 106 (D.D.C. 2010) ("[I]ndividuals mentioned in these records

have a clear privacy interest in avoiding the disclosure of their personal email addresses.");

Shurtleff v. United States Env't Prot. Agency, 991 F. Supp. 2d 1, 18 (D.D.C. 2013) (stating that

government employees have "a significant personal interest in preventing the burden of

unsolicited emails and harassment"); Jud. Watch, Inc. v. U.S. Dep't of State, 306 F. Supp. 3d 97,

116–17 (D.D.C. 2018) ("The case law is clear that there is a substantial privacy interest in full

email addresses.").  Releasing the username portion of an email address alone does not always

constitute an unwarranted invasion of privacy, however, in its declaration, the Department

disclosed the email domain that is associated with the redacted the username.  See 2d Stein Decl.

¶ 9.  Thus, if the Department were to release the username, "a keen observer could piece together

the redacted documents to ascertain the full email addresses."  Judicial Watch, Inc. v. U.S. Dep't

of State, 2017 WL 456417, at *11 (D.D.C. Feb. 2, 2017).

      Furthermore, the Department's explanation for the redaction satisfies its burden under the

foreseeable harm standard.  As the Department aptly represents, disclosure of the Secretary's

email username would subject him or her to "unsolicited or harassing inquiries[,]" Stein Decl.

¶ 40, and, furthermore, would not "shed[] light on an agency's performance of its statutory duties" or otherwise let citizens know what their government is up to.  U.S. Dep't of Def. v. Fed. Lab. Rels. Auth., 510 U.S. 487, 497 (1994).  The Court concludes that the former Secretary's email address clearly has a privacy interest that Exemption 6 was intended to protect, and, accordingly, the Department's redaction of the Secretary's email username was permitted under Exemption 6.  The Court will now address whether former Deputy Secretary Sullivan's email address was appropriately withheld under Exemption 6.

### 2.  Former Deputy Secretary Sullivan's Email Domain

The plaintiff's second objection regards two emails in which the Department redacted the domain portion of the official Department email address of former Deputy Secretary Sullivan.  Pls.' Mem. at 21–22.  The plaintiffs assert that "disclosure of email domains does not constitute a substantial invasion of privacy—and [the Department] has made no showing to the contrary." Id. at 22.  In response, the Department represents that it "already disclosed [ ] that the domain name of that email address is '@state.gov.'"  Def.'s Reply at 12 (citing Stein Decl. ¶ 39); see also 2d Stein Decl. ¶ 10.  In reply, the plaintiffs argue that the Department's disclosure of this "email domain in the publicly-filed Stein Declarations demonstrates that [former Deputy Secretary] Sullivan has no privacy interest in that information[,]" and demand that the pertinent emails be released with the redaction removed.  Pls.' Reply at 11.

The Court concludes that it need not fully consider the privacy interests that may be at issue here because the Department has failed to show how the domain portion of a government email address constitutes a "personnel, medical, or similar file[]" within the meaning of Exemption 6.  Judicial Watch, Inc. v. Dep't of the Navy, 25 F. Supp. 3d 131, 140 (D.D.C. 2014) (alteration in original) (quoting Multi Ag Media LLC v. Dep't of Agric., 515 F.3d 1224, 1227–28 (D.C. Cir. 2008)).  "[T]he Supreme Court has interpreted the phrase, 'similar files' to include

28

all information that applies to a particular individual[.]"  Id. at 141 (quoting Lepelletier v.

F.D.I.C., 164 F.3d 37, 46 (D.C. Cir. 1999)).  And, as the plaintiffs correctly indicate, email

domains, by themselves, do not refer to any specific individual.  Pls.' Mem. at 22.  Perhaps, in

some instances, an email domain could be so unique that its release would reveal the identity of

the address holder, but this is not the Department's justification for nondisclosure under

Exemption 6.  Instead, the Department contends that it has already "disclosed [] the domain

name of [the] email address" in its declarations, and, therefore, "the Court need not decide the

existence or magnitude of the public interest in the email domains used by high-level

government officials."  Def.'s Reply at 12–13 (citing Boyd v. Crim. Div. of U.S. Dep't of Just.,

475 F.3d 381, 388 (D.C. Cir. 2007)).

      However, as the plaintiffs correctly point out, the Department's disclosure only matters

where "the actual records requested had been previously produced[,]" from the records at issue,

which have not been disclosed.  Pl.'s Reply at 12 (emphasis in original); see Boyd, 475 F.3d at

388 (requested report "was located in the work file and subsequently disclosed").  Because the

Department has only disclosed the domain name generally in its declaration, and not within the

specific context of the actual records at issue, continued redaction of former Deputy Secretary

Sullivan's email domain would be inappropriate.  After all, "there is an overriding public interest

. . . in the general importance of an agency's faithful adherence to its statutory mandate,"

Jacksonville Port Auth. v. Adams., 556 F.2d 52, 59 (D.C. Cir. 1977), "to ensure an informed

citizenry, vital to the functioning of a democratic society[,]" Critical Mass Energy Project v.

Nuclear Regulatory Comm'n, 975 F.2d 871, 872 (D.C. Cir. 1992) (citing Fed. Bureau of

Investigations v. Abramson, 456 U.S. 615, 621 (1982)).  In any event, this Court still has a

"statutory function to perform[,]" Perry v. Block, 684 F.2d 121, 125 (D.C. Cir. 1982), until "all

requested [disclosable] <u>records</u> are surrendered," <u>id.</u> (emphasis added).  Thus, the Department

must release these emails without the redaction of the domain portion of former Deputy

Secretary Sullivan's email address.

The Court will now turn to the plaintiffs' challenge to the withholding of private email

information for Department employee Andy Schachter.

### 3.  Department Employee Andy Schachter's Personal Email Domain

The plaintiffs' final Exemption 6 objection concerns the email domain for the private

email address of Department employee Andy Schachter.  <u>See</u> Pls.' Mem. at 23–24.  Specifically,

the plaintiffs argue that the Department "has not met its burden of showing that the disclosure of

the domain portion of the private, non-governmental email address of [ ] Schachter would cause

a substantial invasion into Mr. Schachter's privacy."  <u>Id.</u> at 23.  The Department responds that

"[t]here is no conceivable legitimate public interest in what domain a government employee is

using for his private email because it reflects nothing about what the government is doing."

Def.'s Reply at 13.

But again, the Court concludes that the Department has failed to show that Schachter's

personal email domain, alone, and without the disclosure of the accompanying email username,

is specific enough to constitute a "personnel, medical, or similar file" within the meaning of

Exemption 6.  As the Court previously explained, email domains without their username do not

provide specific individual information about their associated users, and "there is no privacy

interest in the mere domain extensions of email addresses, when release of the domain extension

would not reveal the owner's full email address and the agency does not make any showing

suggesting that the third party has such an interest." <u>Judicial Watch, Inc. v. U.S. Dep't of State</u>,

2017 WL 456417, at *1 (D.D.C. Feb. 2, 2017).  While the Department provides authority where

Courts prohibited the release of (1) entire email addresses or (2) email domains where the

usernames of those email addresses had been previously released, see Def.'s Reply at 13, the Department has identified no authority for the proposition that the release of only the domain of a private email address is the sort of "bits of information" that "can be identified as applying to [an] individual[,]" Judicial Watch, Inc. v. U.S. Dep't of State, 306 F. Supp. 3d 97, 116 (D.D.C. 2018) (quoting U.S. Dep't of State v. Wash. Post Co., 456 U.S. 595, 602 (1982)).

Accordingly, regarding Schachter's personal email domain, and as the Court previously determined regarding Former Deputy Secretary Sullivan's email domain, the Court agrees with the plaintiffs that the Department's withholding under Exemption 6 was inappropriate.  Having now addressed all of the parties' specific disputes, the Court will address the final and more general issue of segregability.

## C.    Segregability

This analysis requires the Court to now address whether the Department provided the plaintiffs with all reasonably segregable information.  Under the FOIA, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection."  5 U.S.C. § 552(b).  "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."  Wilderness Soc'y v. U.S. Dep't of Interior, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (Walton, J.) (emphasis omitted).  Therefore, because "[t]he focus of the FOIA is information, not documents, [ ] an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  Mead Data Ctr., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977).  "A district court's determination that agency records are exempt from disclosure under the FOIA is subject to remand if the court does not also make specific findings on the question of segregability[,]"

Judicial Watch, Inc. v. U.S. Dep't of Def., 245 F. Supp. 3d 19, 36 (D.D.C. 2017) (Walton, J.), "even if the requester did not raise the issue of segregability before the [C]ourt[,]" Sussman v. U.S. Marshals Serv., 494 F.3d 1106, 1116 (D.C. Cir. 2007).

To accord the Court the ability to appropriately assess segregability, it "must be provided with a 'relatively detailed description' of the withheld material."  Judicial Watch, Inc., 245 F. Supp. 3d at 36 (citing Krikorian v. U.S. Dep't of State, 984 F.2d 461, 467 (D.C. Cir. 1993)).  To comply with this requirement, "[a]gencies must review the withheld documents and determine whether, absent the exempted material, the resulting document would still be comprehensible, or whether 'the result would be an essentially meaningless set of words and phrases.'"  Id. at 36 (citing Mead Data Ctr., 566 F.2d at 261).  "[T]o show that an entire document cannot be produced[,]" an agency must conduct "[a] 'document-by-document' review and [provide] a declaration that each piece of information that is withheld is not reasonably segregable[.]"  Id. (citing Juarez v. U.S. Dep't of Justice, 518 F.3d 54, 61 (D.C. Cir. 2008)).

Although "[a]gencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material[,]" Ecological Rts. Found. v. U.S. Envtl. Protection Agency, 541 F. Supp. 3d 34, 66 (D.D.C. 2021) (quoting Sussman, 494 F.3d at 1117), an "agency must provide a 'detailed justification' for [the exempt material's] non-segregability[,]" id. (alterations in original) (quoting Johnson v. Exec. Off. for U.S. Att'ys, 310 F.3d 771, 776 (D.C. Cir. 2002)).  "Affidavits attesting to the agency's 'line-by-line review of each document withheld in full' and the agency's determination 'that no documents contained releasable information which could be reasonably segregated from the nonreleasable portions,' in conjunction with a Vaughn index describing the withheld record, suffice."  Id. (quoting Johnson, 310 F.3d at 776).

The Court concludes that the Department has adequately demonstrated that it "disclose[d all] reasonably segregable material." Sussman, 494 F.3d at 1117.  The Department released all documents either in full or in part.  See Stein Decl. ¶ 54.  "Otherwise, the Department determined that no segregation of meaningful information in the documents could be made without disclosing information warranting protection under the law."  Id.  Based on these representations and on a review of the Department's declarations, the Department's briefs, and the disputed documents specifically provided with the Weeks Declaration, the Court agrees that the Department only withheld information that is exempt from disclosure and material "inextricably intertwined with exempt portions."  Mead Data Cent., Inc., 566 F.2d at 260; see Porup v. Cent. Intel. Agency, 997 F.3d 1224, 1239 (D.C. Cir. 2021) (concluding that "the [a]gency [ ] carried its burden in demonstrating that it released all segregable portions of the responsive documents" where it gave sworn statements that "attested that the [a]gency had 'conducted a page-by-page and line-by-line review, and released all reasonably segregable, non-exempt information' within responsive records . . . [and it] determined that no additional information may be released without divulging information that [ ] falls within the scope of one or more FOIA exemptions" (internal citations omitted)).

## IV.   CONCLUSION

For the foregoing reasons, the Court concludes that it must grant in part and deny in part both the Department's motion for summary judgment and the plaintiff's cross-motion for summary judgment.  Specifically, the Court denies the Department's motion and grants the plaintiffs' cross-motion as to (1) the individual whose name is withheld from the release of the chain of emails depicted in Exhibit F to the Weeks Declaration, (2) former Deputy Secretary Sullivan's email address domain, and (3) Department employee Schachter's personal email

address domain.  In all other respects, the Department's motion is granted, and the plaintiffs'

cross-motion is denied.

      **SO ORDERED** this 2nd day of June, 2022.[12]


                                                    REGGIE B. WALTON
                                                  United States District Judge

---

[12] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.